**Law Office of Patrick Mause, PLLC**

Patrick W. Mause
250 North Meyer
Tucson, Arizona 85701
State Bar No. 24269
520.618.2530
520.622.7967 (Fax)
EMail:  Patrick@PMauseLaw.com

Attorney for Plaintiff Tracy Shoup

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Tracy Shoup, | Case No. |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| Metropolitan Life Insurance Company, a foreign corporation; Cognizant Technology Solutions Services, LLC, an Arizona company; Cognizant Technology Solutions Services, LLC Employee Welfare Benefit Plan, an ERISA-governed benefit plan | |
| Defendants. | |

For her Complaint, Tracy Shoup ("Plaintiff"), alleges as follows:

**Parties, Venue, and Jurisdiction:**

1.      Plaintiff is a resident of Maricopa County, Arizona.

2.      Upon information and belief, defendant Metropolitan Life Insurance Company ("MetLife") is a foreign corporation authorized to do business and doing business in Arizona.

3.      Upon information and belief, defendant Cognizant Technology Solutions Services, LLC ("Cognizant"), is an Arizona limited liability company.

4.      Upon information and belief, defendant Cognizant Technology Solutions Services, LLC Employee Welfare Benefit Plan is an ERISA-governed employee welfare benefit plan.

1

5.      Plaintiff's claim is for short-term disability (STD) and long-term disability (LTD) benefits which were insured and administered by MetLife, and for other benefits provided by her employer's welfare benefits plan.

6.      The Court has jurisdiction under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, and 28 U.S.C. § 1331 diversity of citizenship.

7.      Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391.

**The Benefit Plan:**

8.      Plaintiff was a loyal employee of Cognizant before becoming disabled in May 2011.  Ms. Shoup's last date worked was May 23, 2011.

9.      At the time she became disabled, Ms. Shoup was working for Cognizant and was covered under its ERISA-governed employee welfare benefits plan.

10.     As part of her ERISA benefits package, Ms. Shoup was provided with STD and LTD insurance, both of which were administered and insured by defendant MetLife.

11.     Upon information and belief, Ms. Shoup may have been entitled to other plan benefits by virtue of her disability.

**Background — Ms. Shoup Injures Her Back and Becomes Disabled:**

12.     On May 23, 2011, Ms. Shoup severely injured her back.

13.     Because of the pain caused by her back injury, Ms. Shoup was unable to continue working.  Initially, Ms. Shoup used several days of vacation hoping to be able to return to work after resting.  Unfortunately, her back pain remained severe and she was unable to return to work.

14.     Pursuant to the STD plan terms, Ms. Shoup applied for short-term disability benefits.

15.     By letter dated August 5, 2011, MetLife denied her claim.  In its denial letter, MetLife informed Ms. Shoup of her right to appeal, but gave only limited details regarding the types of information she could submit to support her claim.

16.     By letter dated August 31, 2011, Ms. Shoup timely appealed MetLife's denial.

17.     MetLife wrote to Ms. Shoup on September 5, 2011 stating her claim had been referred to what it described as an "independent claim review."

18.     In fact, MetLife referred Ms. Shoup's claim Dr. Neil McPhee for a medical review.  Dr. McPhee is a doctor who is retained on a regular basis by disability insurance companies to complete "independent claim reviews."

19.     Upon information and belief, Dr. McPhee's reviews are not truly "independent" as they are tainted by his inherent financial conflict of interest as a frequent medical consultant for the disability insurance industry.

20.     Although Dr. McPhee's office is located in Scottsdale, Arizona, and although Ms. Shoup lives in Phoenix, Arizona, MetLife did not request that Dr. McPhee personally examine Ms. Shoup.  Rather MetLife requested that Dr. McPhee merely review Ms. Shoup's medical records, attempt "peer-to-peer" phone calls with Ms. Shoup's treating physicians, and render an opinion without ever meeting with Ms. Shoup.

21.     As part of his review, Dr. McPhee called Ms. Shoup's primary care physician, Dr. Sameera Raza, purportedly to conduct a "peer-to-peer" teleconference regarding Ms. Shoup's claim.

22.     However, as Dr. McPhee's report shows, and as Dr. Raza's telephone message note documents, Dr. McPhee did not conduct a meaningful dialogue with Dr. Raza.  Rather, as Dr. Raza's note shows, he asked one question — "he only asked me when pt [patient] was last seen in the office" and then stated his opinions.

3

23.     As Dr. McPhee's report shows, he also contacted Ms. Shoup's pain management doctor, Abram Burgher, M.D., and again failed to conduct a meaningful dialogue with Dr. Burgher.

24.     In a report dated September 30, 2011, Dr. McPhee concluded that Ms. Shoup's restrictions were unsupported.

25.     On October 12, 2011, Ms. Shoup underwent a lumbar MRI which showed, among other things:  "L4-L5: Broad-based left paracentral protrusion measures 1.3 cm transverse by 0.5 cm AP…  There is resultant mild central canal stenosis with disc contacting and displacing the traversing left L5 nerve root…"

26.     By letter dated October 19, 2011, MetLife denied Ms. Shoup's claim.

27.     On October 26, 2011, Dr. Burgher wrote to MetLife disputing Dr. McPhee's conclusions.  In his letter, Dr. Burgher noted that Ms. Shoup's diagnoses included "lumbar degenerative disc disease, lumbar facet syndrome and lumbar radiculopathy."  He also opined that her symptomology "has been quite disabling for her. Patients with her diagnoses commonly have difficulty sitting for periods longer than even 15 minutes, and she has demonstrated that as well."

28.     In December 2011, MetLife forwarded Dr. Burgher's letter and the October 12, 2011 MRI to Dr. McPhee, and asked whether this information changed his opinion. Dr. McPhee opined that "the opinions expressed in my original report dated 9/30/11 remain unchanged."

29.     Before MetLife rendered a final decision, Ms. Shoup contacted MetLife on December 15, 2011 through her counsel and stated that she would file a formal appeal at a later date.

30.     By letter dated December 29, 2011, MetLife wrote to Ms. Shoup's counsel stating that it was "ready to make a decision" and stated that "any additional information you wish to have considered for this review needs to be in our office no later than 30 days from the date of this letter, which is January 30, 2012."

31.     On January 26, 2012, Ms. Shoup provided additional information to MetLife supporting her claim.  Included in this information was a functional capacity evaluation finding Ms. Shoup was unable to work, even in a sedentary capacity; a January 18, 2012 MRI objectively documenting Ms. Shoup's numerous spinal problems; a November 10, 2011 consultation note from Dr. William R. Stevens, Ms. Shoup's orthopedic surgeon, which documented Ms. Shoup's numerous spinal problems; Dr. Stevens' November 22, 2011 operative report documenting Ms. Shoup's numerous spinal problems; Dr. Stevens' December 15, 2011 consultation note documenting that Ms. Shoup had reinjured her back following her surgery; and more.

32.     Ms. Shoup saw Dr. Stevens again on January 30, 2012, and on February 2, 2012, Ms. Shoup faxed and mailed Dr. Stevens' January 30, 2012 consultation report to MetLife.  This note documented her continued and worsening condition.

33.     Although MetLife promised to consider additional information in its December 29, 2011 letter, it has not made a decision.

34.     Beginning in March 2012, Ms. Shoup began contacting MetLife periodically to inquire regarding the status of her claim but has yet to receive a decision.

35.     Under ERISA, MetLife has a limited time to make a decision.

36.     Currently, MetLife is nearly three months beyond its ERISA deadline to make a final decision.

37.     Under ERISA, MetLife's failure to make a final decision should be treated as equivalent to a denial.

38.     It would be futile for Ms. Shoup to continue awaiting a final denial.

39.     Ms. Shoup has therefore exhausted her administrative remedies under ERISA.

40.     Ms. Shoup's claim for benefits under ERISA is ripe.

5

**Claim for Benefits Under ERISA:**

41.     MetLife's denial and its subsequent failure to approve Ms. Shoup's benefits is contrary to the plan terms and the medical evidence.

42.     Pursuant to ERISA, 29 U.S.C. § 1132, Ms. Shoup is entitled to recover unpaid short- and long-term disability benefits, prejudgment interest, reasonable attorney's fees, and costs from defendants MetLife and the plan.

43.     MetLife's inherent financial conflict of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

44.     MetLife further precluded a full and fair review of Ms. Shoup's claim by failing in its denial letter to provide Ms. Shoup with a "description of any additional material or information" that was necessary for Ms. Shoup to "perfect the claim," and failed to do so "in a manner calculated to be understood by the claimant."  29 U.S.C. § 1133(2); 29 C.F.C. § 2560.503-1(g)(1) and (h)(2).

45.     If the abuse of discretion standard of review applies, Ms. Shoup is entitled to discovery regarding MetLife's conflicts of interest; the conflicts of interest of the medical, vocational, and other consultants used or retained by MetLife, including but not limited to Dr. McPhee; and the effects of those conflicts on MetLife's decision.  The court may weigh the nature, extent, and effect of these conflicts of interest in determining whether MetLife abused its discretion.

46.     If the *de novo* standard of review applies, Ms. Shoup is entitled to engage in discovery regarding, among other things, the credibility of MetLife's medical and other experts, including but not limited to Dr. McPhee.  *Opeta v. Northwest Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007).

47.     Ms. Shoup has been injured and suffered damages in the form of lost disability benefits as a result of MetLife's and the plan's wrongful decision to deny her disability benefits and its failure to inform Ms. Shoup about her rights under ERISA.

48.    Plaintiff has also been injured and suffered damages due to MetLife's and the plan's wrongful decision to deny her disability benefits by losing other benefits that are available to him under her employer's ERISA benefit plan.

WHEREFORE, Plaintiff Tracy Shoup prays for judgment as follows:

A.    For long- and short- term disability benefits due under the STD and LTD plans;

B.    For other benefits due Plaintiff under her employer's ERISA benefits plan;

C.    For prejudgment interest;

D.    For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. § 1132(g); and

For such other relief as the Court deems just and proper.

DATED this 22nd day of June, 2012.

LAW OFFICE OF PATRICK MAUSE, PLLC

By   s/ Patrick W. Mause
                    Patrick W. Mause
                    Attorney for Plaintiff